UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HECTOR MONTES, RICHARD MONTES, JENNIFER PINE, and ROBERT BERTUCCI, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 04 C 4447 |
| SGT. JAMES DISANTIS, a Town of Cicero Police Officer, TOWN OF CICERO, a municipal corporation, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Hector Montes, Richard Montes, Jennifer Pine, and Robert Bertucci have filed suit

against the Town of Cicero (the "Town") and Sergeant James DiSantis of the Cicero Police

Department[1] alleging that DiSantis used excessive force against Pine, Hector Montes, and Richard

Montes; falsely arrested and detained all four Plaintiffs; and maliciously prosecuted Hector Montes

in connection with two illegal traffic stops. Plaintiffs claim that DiSantis's actions constitute a

violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962,

and that the Town is liable under the doctrine of indemnification and pursuant to a "policy, practice,

and custom claim." DiSantis has moved to dismiss Bertucci's false arrest and detention claim, as

well as the RICO and malicious prosecution claims. For the reasons set forth below, the motion is

granted in part and denied in part.

---

[1]     Though not specified in the complaint, Plaintiffs do not dispute that they have sued
DiSantis in his individual capacity. See Miller v. Smith, 220 F.3d 491, 494 (7th Cir. 2000) ("[W]here
the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant
has been sued in [his] individual capacity" even if that has not been set forth in the complaint.)

## BACKGROUND

Hector and Richard Montes are brothers who both reside in the Town of Cicero in Cook County, Illinois. (SAC ¶¶ 2, 11.)[2] Jennifer Pine and Robert Bertucci were, at all relevant times, homeless and living within Cook County, Illinois. (*Id.* ¶ 3.) DiSantis is a police sergeant with the Town of Cicero Police Department ("Cicero PD").[3] (*Id.* ¶ 4.) The following factual allegations are drawn from the Second Amended Complaint and are assumed true for purposes of this motion to dismiss. *See Kim v. Kim*, 360 F. Supp. 2d 897, 899 (N.D. Ill. 2005).

### A. The Traffic Stops

On September 1, 2003, DiSantis approached Pine in front of a business establishment in the 5900 block of West Roosevelt Road in Cicero, which happened to be within 1,000 feet of a school. DiSantis, who was on duty at the time and in uniform armed with a weapon, solicited Pine for oral sex. When Pine refused DiSantis's "offer to engage in prostitution," he became "visibly angry with her." (*Id.* ¶¶ 6, 7.) Two days later on September 3, 2003, DiSantis and another unidentified Cicero police officer stopped Pine and her passenger, Bertucci, while they were driving on Roosevelt Road. At the time, Pine and Bertucci were neither committing any crime nor violating any statute, law or ordinance. (*Id.* ¶ 8.) DiSantis ordered Pine out of the vehicle and proceeded to "verbally and physically abuse Ms. Pine in retaliation for her rebuking his earlier advances of prostitution." (*Id.* ¶ 9.) DiSantis also threatened to kill Bertucci, causing him "severe emotional distress." (*Id.*) Apart from Bertucci's association with Pine, no suggestion of DiSantis's motivation for the death threats appears in the complaint.

During the traffic stop, Hector Montes apparently approached the scene in his own vehicle and observed DiSantis hitting Pine. Hector drove home to pick up his brother, Richard, and to

---

2  Plaintiffs' Second Amended Complaint is cited as "SAC ¶ __."

3  The complaint does not indicate when DiSantis started working for the Cicero PD, or who hired him.

retrieve their video camera. Upon returning to the scene (where the beating presumably continued, despite the elapse of time), the Montes brothers filmed the encounter between DiSantis and Pine and then drove off towards Chicago. (*Id.* ¶¶ 10, 11.) Realizing that the Montes brothers had videotaped the encounter, DiSantis drove after their vehicle and stopped the two men near the border of Cicero and Chicago.[4] (*Id.* ¶ 12.) DiSantis had no legal basis for the stop, but pulled the Montes brothers over in order to retrieve the video camera, and threatened to beat them unless they turned it over to him. DiSantis ultimately seized and broke the camera, and destroyed the film, and demanded that Hector and Richard give him the camera's "memory stick." (*Id.* ¶¶ 13, 14.) When the Montes brothers told DiSantis that the camera did not have such a device, DiSantis hit Hector in the face with the camera, causing lacerations, bruising, soreness, and swelling. DiSantis also "tightly squeezed the testicles of both of the Montes Plaintiffs" and referred to them several times as "fucking Mexicans." (*Id.* ¶ 14.)

After destroying the video camera, DiSantis searched the Montes brothers and apparently found firearm ammunition in their vehicle, but no Firearm Owner's Identification Card ("FOID card"). DiSantis charged Hector with the misdemeanor offense of possession of firearm ammunition without an FOID card, though Hector claims he owned a valid FOID card somewhere in his possession (though presumably not on his person) at the time of his arrest. (*Id.* ¶ 15.) Plaintiffs claim that DiSantis "purposely and unreasonably" extended Hector's stay in custody on the misdemeanor arrest by threatening to have him charged with a felony and "doing and/or causing to be done an illegal search and seizure of his home and property therein" without probable cause. (*Id.* ¶ 16.) On October 6, 2003, the case against Hector – *People v. Hector Montes*, No. 03401033401 – "was S.O.L. [stricken off with leave to reinstate] in a manner suggesting the innocence of Plaintiff Hector Montes," and Hector demanded a trial to start the running of the speedy trial clock. (*Id.* ¶ 15.)

---

[4]        Plaintiffs do not indicate what, if anything, happened to Pine and Bertucci after DiSantis left the scene.

3

## B. Plaintiffs' Lawsuit

On July 7, 2004, Hector Montes filed suit against DiSantis and the Town in connection with the September 2003 traffic stop. Montes charged DiSantis with intentional infliction of emotional distress ("IIED") and several violations of 42 U.S.C. § 1983, including excessive force, false arrest and detention, and violation of property rights. He also asserted a claim for indemnification against the Town and separately alleged a "Monell policy, practice, and custom claim." On October 22, 2004, DiSantis moved to dismiss the property rights violation and IIED claims for failure to state a claim under FED. R. CIV. P. 12(b)(6). Rather than responding to that motion, Hector filed a First Amended Complaint on November 3, 2004, adding Pine and Bertucci as plaintiffs; deleting the property rights violation and IIED claims; and adding a RICO claim against DiSantis. Shortly thereafter on November 24, 2004, Plaintiffs requested leave to file a Second Amended Complaint to add Richard Montes as a plaintiff; to clarify that the RICO claim is stated against both DiSantis and the Town[5]; and to add a claim for malicious prosecution on behalf of Hector Montes. (Motion for Leave to File Second Amended Complaint, Doc. No. 18, ¶¶ 3-5.)

The Town answered the Second Amended Complaint ("SAC") on December 3, 2004. DiSantis answered the SAC in part on December 23, 2004, but also filed a motion to dismiss several claims as discussed below.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

---

[5]     The court notes that as drafted, the Second Amended Complaint does not in fact purport to state a RICO claim against the Town. (*See* SAC Count 3 ("Hector Montes and Richard Montes against DiSantis").)

4

In reviewing a motion to dismiss for failure to state a claim, the court accepts as true all factual allegations in the plaintiff's complaint and draws all reasonable inferences in his favor. *Flannery v. Recording Industry Ass'n of Am.*, 354 F.3d 632, 640 (7th Cir. 2004); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 770 (7th Cir. 2002).

DiSantis seeks to dismiss Bertucci's false arrest and detention claim for failure to allege a cognizable restraint or arrest. DiSantis also claims that the Montes Plaintiffs cannot state a RICO claim against him because he did not conduct the affairs of an enterprise through a pattern of racketeering activity. Finally, DiSantis argues that Hector Montes cannot plead the elements of a malicious prosecution claim because the misdemeanor charge against him was "SOL'd." The court considers each argument in turn.

## A. False Arrest and Detention

DiSantis argues that Bertucci cannot state a claim for false arrest and detention because he was never restrained or arrested. Citing *Fuentes v. Sheahan*, No. 03 C 4892, 2004 WL 1611607 (N.D. Ill. July 19, 2004), DiSantis argues that Illinois law requires Bertucci to prove that DiSantis (1) restrained or arrested him; and (2) acted without having reasonable grounds to believe that he had committed an offense. *Id.* at *5 (citing *Meerbrey v. Marshall Field and Co.*, 139 Ill. 2d 455, 474, 564 N.E.2d 1222, 1231 (1990)). According to DiSantis, Plaintiffs' allegations that Bertucci was a passenger in Pine's vehicle and that DiSantis threatened to kill him are insufficient to plead an improper restraint or arrest. (Def. Mem., at 3.)[6]

Plaintiffs insist that "the temporary detention of individuals – drivers and passengers alike – during a vehicle stop constitutes a 'seizure' of 'persons' within the meaning of the fourth

---

[6]     The Memorandum of Law in Support of Defendant DiSantis's Motion to Dismiss Counts II, III, and VI of Plaintiffs' Second Amended Complaint Pursuant to FED. R. CIV. P. 12(b)(6) is cited as "Def. Mem., at __."

amendment." (Pl. Resp., at 2)[7] (quoting *People v. Bunch*, 207 Ill. 2d 7, 13, 796 N.E.2d 1024, 1029 (2003).) Bertucci was "seized," Plaintiffs argue, when DiSantis stopped the vehicle in which he was riding, and the SAC adequately alleges that the stop was unreasonably based upon DiSantis's desire to retaliate against Pine for rebuffing his earlier sexual advances. (*Id.*) DiSantis responds only that Bertucci failed to allege that he was arrested or "somehow compelled to submit to the alleged detention of Pine's car." (Def. Reply, at 2)[8] (citing *Williams v. Brown*, 269 F. Supp. 2d 987, 991 (N.D. Ill. 2003) (overturned on other grounds) ("Circumstances that might indicate a seizure, even where the person did not attempt to leave, include some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.") (internal quotations omitted).)

At this stage of the proceedings, the court is satisfied that Plaintiffs have alleged a false arrest claim on behalf of Bertucci. Though Bertucci was only a passenger in Pine's car, he was nonetheless temporarily detained when DiSantis pulled Pine over for a traffic stop. *See United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) ("Childs was placed in custody by the stop of the car in which he was a passenger. That custody's nature and duration must be 'reasonable' under the fourth amendment.") For purposes of a motion to dismiss, Plaintiffs have alleged that the detention was long enough to constitute an arrest; indeed, it lasted at least long enough for Hector Montes to drive home, pick up his brother and get a camera, and drive back to the scene to capture the incident on film. DiSantis allegedly threatened to kill Bertucci during that stop, which suggests that DiSantis used language or a tone of voice that could have led a reasonable person to feel that he could not then leave the scene throughout this period. *See Williams*, 269 F. Supp. 2d at 991.

---

[7]    Plaintiffs' Memorandum of Law in Support of their Response to Defendant James DiSantis's Motion to Dismiss is cited as "Pl. Resp., at __."

[8]    The Reply Memorandum of Law in Support of Defendant DiSantis's Motion to Dismiss Counts II, III, and VI of Plaintiffs' Second Amended Complaint is cited as "Def. Reply, at __."

As for the reasonableness of the traffic stop itself, Plaintiffs allege that DiSantis stopped Pine's car even though neither she nor Bertucci was committing any crime or violating any law. (SAC ¶ 8.) Plaintiffs also allege that DiSantis acted "in retaliation for [Pine] rebuking his earlier advances of prostitution." (*Id.* ¶ 9.) This is sufficient to plead that DiSantis did not have a reasonable basis for the stop. *See Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998) ("Complaints need not spell out every element of a legal theory."); *Kellers Sys., Inc. v. Transport Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 1000 (N.D. Ill. 2001) ("Under Rule 8(a)'s liberal notice pleading standards, the court will not dismiss a complaint unless it is clear that there are no facts that complainant could prove consistent with the pleadings.") Although the facts may not ultimately support this claim, the court concludes that Plaintiffs' allegations are sufficient. Defendant's motion to dismiss the false arrest claim as to Bertucci is denied.

**B.     RICO**

RICO makes it unlawful for

> any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c). To state a RICO claim against DiSantis, the Montes Plaintiffs must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Bressner v. Ambroziak*, 379 F.3d 478, 481-82 (7th Cir. 2004) (internal quotations omitted). DiSantis argues that the Montes Plaintiffs have not alleged any of these elements.

**1.     Conduct of an Enterprise**

DiSantis first argues that there are no allegations suggesting that he conducted the affairs of a RICO enterprise. As a preliminary matter, it is not clear what constitutes the relevant "enterprise" in this case. The SAC alleges that DiSantis "used the Town of Cicero Police Department, an enterprise affecting interstate commerce . . ., to conduct a pattern of racketeering

activity against Plaintiffs," but it also alleges that "the Town was the driving force behind such actions by failing to discipline DiSantis, even though it was put on notice that he had an extensive history of using excessive force, making false arrests, and using the Town of Cicero to conduct this racketeering activity." (SAC ¶ 17.) In his opening memorandum, DiSantis objects that the Town is not a RICO enterprise and says nothing about the Cicero PD. Plaintiffs insist that the Town is such an enterprise, but rely solely on two cases in which the alleged enterprise was the Chicago Police Department, and not the City of Chicago. *See United States v. Kovic*, 684 F.2d 512, 516 (7th Cir. 1982); *Evans v. City of Chicago*, No. 00 C 7222, 2001 WL 1028401, at *8 (N.D. Ill. Sept. 6, 2001). DiSantis's reply memorandum then focuses on the Cicero PD.

An "enterprise" under RICO includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It is well-established that the Town and the Cicero PD both qualify as "enterprises" for purposes of § 1962(c). *Kovic*, 684 F.2d at 516 ("[G]overnmental or public entities fit within the definition of 'enterprise' for purposes of RICO.") (citations omitted). Thus, the court will consider whether Plaintiffs have alleged that DiSantis conducted the affairs of both the Town and the Cicero PD.

To conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). DiSantis claims that the allegations against him reflect that he was directing only his own affairs by propositioning Pine, stopping and assaulting her in retaliation for her resistance, battering the Montes brothers, breaking their camera, and citing Hector with a misdemeanor. (Def. Mem., at 4.) In DiSantis's view, the fact that Plaintiffs expressly allege that the entire incident "stemmed from a personal gripe between DiSantis and Pine further indicat[es] that none of the alleged acts has anything to do with the affairs of the Town." (*Id.* at 4-5.) Plaintiffs respond merely by insisting that DiSantis "used his position as a Cicero police sergeant to stop,

8

search and seize the Montes Plaintiffs, and demand that they give him their property on threat of physical abuse and/or arrest. In other words, DiSantis conducted his activity 'through' the Town of Cicero by using his authority as a police officer to conduct his affairs." (Pl. Resp., at 5.)

The court does not believe that Plaintiffs have alleged that DiSantis conducted the affairs of the Town of Cicero. There are no allegations suggesting that DiSantis had any involvement in the operations or management of the Town, or that he otherwise participated in the Town's affairs, either directly or under the direction of others. Plaintiffs' conclusory assertion that DiSantis "conducted his activity 'through' the Town of Cicero" does not satisfy the requirement that he also conduct the affairs of the Town itself. (Pl. Resp., at 5.) *See Reves*, 507 U.S. at 185 ("[O]ne is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself.") With respect to the Cicero PD, on the other hand, Plaintiffs have alleged that DiSantis participated in the affairs of the Department by virtue of his position as a police sergeant. They have also alleged that he used that position to conduct the allegedly illegal traffic stop and to file a misdemeanor charge against Hector Montes. *See Evans*, 2001 WL 1028401, at *8 (plaintiff alleged that police officers conducted the affairs of the Chicago Police Department enterprise where, "[w]ithout such [police] power, the Officers would not have been able to threaten to arrest plaintiff, to strip search him, to arrest him, to plant evidence on him, and to testify falsely against him as they allegedly did.") Plaintiff may well be attempting to stretch the concept of acting "under color of law" to mean acting "through a RICO enterprise." Nevertheless, the court will assume for purposes of this decision that Plaintiffs have alleged that DiSantis conducted the affairs of the Cicero PD, a RICO "enterprise."

### 2. Pattern of Racketeering Activity

More problematic is the requirement that Plaintiffs allege a pattern of racketeering activity. "A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering

9

committed within a ten-year time period," characterized by "continuity plus relationship." *Bressner*, 379 F.3d at 482 (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998)); *United States v. Baker*, 905 F.2d 1100, 1104 (7th Cir. 1990). DiSantis argues that Plaintiffs have not alleged two predicate acts, or any threat of continued criminal activity. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) ("[A] plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.")

Before addressing these arguments, the court considers DiSantis's objection to Plaintiffs' allegation that DiSantis "himself and/or in a conspiracy with other Town of Cicero Police Officers" committed the predicate RICO offenses. (SAC ¶ 28.) DiSantis argues that Plaintiffs cannot plead a conspiracy to violate RICO with other unnamed Cicero PD police officers because "the very crux of the Montes Plaintiffs' suit is their interaction with DiSantis." (Def. Mem., at 6.) Specifically, the SAC alleges that DiSantis alone pulled over the Montes brothers' vehicle, battered them, broke their camera, and charged Hector with a misdemeanor.

Plaintiffs insist that "DiSantis' co-conspirators did not need to directly participate in the actions, as long as they were voluntary participants in a common venture, understood the general objectives of the scheme, accepted them, and agreed, either explicitly, or implicitly, to do their part to further the scheme." (Pl. Resp., at 5) (citing *Williams v. Brown*, 269 F. Supp. 2d 987 (N.D. Ill. 2003), *rev'd in part on other grounds*, No. 01 C 3228, 2003 WL 22454083 (N.D. Ill. Oct. 3, 2003).) The plaintiffs in *Williams*, however, alleged that the defendant officers conspired to violate the plaintiffs' rights by agreeing to raid a basketball tournament and force the plaintiffs to submit to unlawful searches. *Williams*, 269 F. Supp. 2d at 990. By contrast, the SAC contains no allegations supporting an inference that DiSantis's wholly unidentified alleged co-conspirators agreed to violate Plaintiffs' rights, nor any facts indicating what, if any, actions they took as part of the conspiracy. Plaintiffs' conclusory assertion that DiSantis acted "in a conspiracy with" other unidentified police officers, without any explanation as to where these others were or what they were doing during the

10

alleged predicate acts, is not sufficient to allege a RICO conspiracy. *See Evans*, 2001 WL 1028401, at *6 ("Conclusory allegations of 'conspiracy' are not sufficient to state a claim under § 1962(d); rather, [plaintiff] must allege facts from which one can infer each defendant's agreement to violate § 1962(c).") (quoting *Schiffels v. Kemper Financial Servs.*, 978 F.2d 344, 352 (7th Cir. 1992)). Thus, the conspiracy portion of Plaintiffs' RICO claim is dismissed.

### a. Predicate Acts

DiSantis argues that Plaintiffs have not alleged two predicate acts of racketeering as required by RICO. RICO defines "racketeering activity" to mean:

> any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year.

18 U.S.C. § 1961(1)(A). Paragraph 28 of the SAC sets forth the following predicate acts:

> [(1)] intimidation (720 ILCS 5/12-6), stalking (720 ILCS 5/12-7.3), official misconduct (720 ILCS 5/33-1), obstruction of justice (720 ILCS 5/31-4), soliciting for a prostitute (720 ILCS 5/11-15), pandering (720 ILCS 5/11-15), aggravated battery (720 ILCS 5/12-4), robbery (720 ILCS 5/18-2), armed robbery (720 ILCS 5/18-2), aggravated robbery (720 ILCS 5/18-5), criminal damage to property (720 ILCS 5/21-1) . . . ; (2) obstruct[ion of] justice in violation of 18 U.S.C. § 1503; (3) obstruct[ion of] a criminal investigation in violation of 18 U.S.C. § 1511; (4) tamper[ing] with a witness, victim or informant in violation of 18 U.S.C. § 1513; (5) retaliat[ion] against a witness, victim or informant in violation of 18 U.S.C. § 1513; and (6) commi[ssion of] the offense of extortion, in violation of the federal Hobbs Act [18 U.S.C. § 1951].

(SAC ¶ 28.) DiSantis first notes that of the eleven Illinois state crimes identified in paragraph 28, only three are expressly mentioned in § 1961(1)(A): robbery, armed robbery, and aggravated robbery. DiSantis claims that Plaintiffs have not alleged a robbery because DiSantis gave the video camera back to the Montes brothers after he broke it. In DiSantis's view, "[d]amaging property and robbing someone of their property are obviously different." (Def. Mem., at 7.) The court disagrees.

Plaintiffs allege that DiSantis threatened to "beat" the Montes brothers if they did not turn over the video camera, and that DiSantis "seized" the camera before breaking it and hitting Hector

in the face with it. (SAC ¶ 14.) Under Illinois law, "[t]he offense of robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will." *People v. Dennis*, 181 Ill. 2d 87, 102, 692 N.E.2d 325, 333 (1998). In addition, robbery involves "the use of force in the taking of property, regardless of intent or the anticipated duration of the taking." *People v. McCarty*, 94 Ill. 2d 28, 33, 445 N.E.2d 298, 301 (1983). Plaintiffs' allegations are thus sufficient to allege the predicate act of robbery.

As for the remaining eight state law offenses, Plaintiffs construe DiSantis's actions as constituting "threat[s] involving murder, kidnapping, . . . robbery, . . . extortion, [or] dealing in obscene matter . . ." (Pl. Resp., at 6) (quoting 18 U.S.C. § 1961(1)(A).) Plaintiffs' logic is as follows:

> In soliciting Pines for prostitution, within 1,000 feet of a school, (Compl. ¶¶ 6-7), DiSantis committed the felonies of solicitation for prostitution (720 ILCS 5/11-15), pandering (720 ILCS 5/11-16), and official misconduct (720 ILCS 5/33-1), thus committing acts "involving" an obscene matter. In soliciting Pines, then following her on another occasion, seizing her, beating her, and threatening Bertucci and the Montes Plaintiffs, taking the Montes' video camera in an attempt to conceal his beating of Pine, and beating the Montes Plaintiffs (Compl. ¶¶ 6-15), DiSantis committed the felonies of stalking (720 ILCS 5/12-7.3), intimidation (720 ILCS 5/12-6), obstruction of justice (720 ILCS 5/31-4), . . . criminal damage to property (720 ILCS 5/21-1), and official misconduct (720 ILCS 5/33-1).

(*Id.*) Plaintiffs have not cited a single case to support their position that soliciting someone for sex on one occasion constitutes "dealing in obscene matter" for purposes of RICO. Nor have they explained how the additional Illinois crimes they cite suffice as predicate acts, aside from the bald assertion that they somehow "involve" murder, kidnapping, robbery, and/or extortion. Indeed, the only case Plaintiffs do cite, an unreported district court decision, merely establishes that "[b]y defining the racketeering act as 'any act or threat involving' one of the enumerated offenses, it is clear that Congress intended to include more than the merely completed offense." *United States v. Cunningham*, Crim. Action No. 95-88, 1996 U.S. Dist. LEXIS 22335, at *30 (N.D. Ill. Jan. 18, 1996) (rejecting argument that Congress did not intend to include "attempted" crimes in the term "any act or threat involving" that crime). Whether or not a particular act was "completed" or just

"attempted," it must still constitute a "predicate act" under RICO. Plaintiffs have not made such a showing here.

Plaintiffs also claim that they have alleged the predicate act of extortion under the Hobbs Act.[9] The Hobbs Act makes it a crime to obstruct, delay, or affect interstate commerce by extortion, which is defined as "the obtaining of property from another with [the owner's] consent," where such consent is "induced by the wrongful use of actual or threatened force, violence, or fear." *National Organization for Women, Inc. v. Scheidler*, 396 F.3d 807, 809-10 (7th Cir. 2005); *Wagner v. Magellan Health Servs., Inc.*, 125 F. Supp. 2d 302, (N.D. Ill. 2000) (extortion involves "an attempt to obtain property or money of another through wrongful use or threats of force or fear, and that the extortion affected interstate commerce.") Plaintiffs contend that they have satisfied these requirements by alleging that "DiSantis . . . exercised control over the video camera, and he transferred possession of the camera when he took it from the Plaintiffs and destroyed it, all in an attempt to conceal evidence of his police misconduct." (Pl. Resp., at 8.) DiSantis argues that Plaintiffs must allege that he "pursued [or] received 'something of value from' [Plaintiffs] that [he] could exercise, transfer, or sell." *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 405 (2003); (Def. Mem., at 8.) The broken camera, DiSantis says, does not qualify because he returned it to the Montes brothers.

Even assuming that DiSantis's actions in threatening the Montes brothers and seizing and breaking their camera on one occasion constituted extortion, Plaintiffs have not alleged that the

---

[9]     Plaintiffs acknowledge that they have not alleged the other federal predicate acts of obstruction of justice, 18 U.S.C. § 1503; obstruction of a criminal investigation, 18 U.S.C. § 1511; tampering with a witness, victim, or informant, 18 U.S.C. § 1513; or retaliating against a witness, victim, or informant, 18 U.S.C. § 1513. (Pl. Resp., at 7.) They ask for leave to amend the SAC, however, to allege that DiSantis "knew he was the subject of a grand jury investigation looking into his continued violation of citizens' civil rights, and that he took the actions complained of in this case to obstruct a criminal investigation, influence witnesses and/or victims, and to retaliate against them, in violation of 18 U.S.C. §§ 1503, 1513." (*Id.* at 7 n.1.) Such an amendment would not cure other defects in the RICO claim addressed below, and the court declines to grant Plaintiffs a third opportunity to amend absent a properly supported motion.

13

actions affected interstate commerce as required under the Hobbs Act. *United States v. Peterson*, 236 F.3d 848, 851 (7th Cir. 2001); *United States v. Klinzing*, 315 F.3d 803, 807 (7th Cir. 2003) (noting that the Hobbs Act "criminalizes acts of extortion . . . that interfere with interstate commerce"). Plaintiffs direct the court to *Evans v. City of Chicago* for the proposition that an allegation that the Cicero PD purchased office supplies from outside Illinois satisfies the interstate commerce requirement. *Evans*, however, addressed the interstate commerce requirement only for purposes of RICO § 1962(c), and not the Hobbs Act. 2001 WL 1028401, at *8.

Plaintiffs are correct that "[a] *de minimis* effect [on interstate commerce] is enough" for a Hobbs Act violation, but only "provided it is not speculative or attenuated." *United States v. Conn*, 769 F.2d 420, 424 (7th Cir. 1985). In this case, there is no allegation that the Montes brothers were involved in interstate commerce, or that the loss of their camera somehow implicated, or had the potential to implicate, interstate commerce. *See United States v. Stillo*, 57 F.3d 553, 559 (7th Cir. 1995) (noting that successful and attempted extortion schemes are unlawful to the extent they "induce a victim engaged in interstate commerce to part with property.") Nor may Plaintiffs rely on a depletion-of-assets theory, which does not apply to individual victims. *See United States v. Boulahanis*, 677 F.2d 586, 590 (7th Cir. 1982) (theory that commerce is affected when an enterprise that customarily purchases items in interstate commerce has its assets depleted, thereby curtailing its potential as a purchaser of such goods, does not apply to individuals, who generally purchase on a smaller scale than businesses). *Compare Stillo*, 57 F.3d at 558-59 (affirming extortion conviction of judge who accepted bribe money from an attorney to fix a criminal case where payment could deplete the assets of the attorney's law firm, which purchased goods in interstate commerce). Thus, Plaintiffs have not alleged a predicate act of extortion under the Hobbs Act.

In sum, Plaintiffs have alleged only one predicate act of racketeering – robbery – which is insufficient to state a RICO claim.

### b. Continuity

Plaintiffs' RICO claim also fails for the additional reason that they have not alleged any threat of continued criminal activity as required to set forth a pattern of racketeering. "[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J.*, 492 U.S. at 239. Continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. In *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986), the Seventh Circuit adopted several factors to determine whether activity satisfies the "relationship plus continuity" test established by the Supreme Court in *H.J.*:

> the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.

804 F.2d at 975.

Plaintiffs do not dispute that these factors all weigh against a finding of continuity in this case. The Montes brothers had but one encounter with DiSantis on September 3, 2003, and they are the only two alleged victims of DiSantis's racketeering. In addition, there are no allegations suggesting that the conduct directed against the Montes brothers continued past September 3, 2003, or that they suffered any distinct injuries. *Compare Morgan*, 804 F.2d at 976 (relationship plus continuity test satisfied where plaintiffs alleged several acts of mail fraud over a period of several years). *See also Meyer Material Co. v. Mooshol*, 188 F. Supp. 2d 936, 943 (N.D. Ill. 2002) ("[A] single scheme to defraud a single victim, resulting in a single economic injury, does not comport with the 'continuity' factor of RICO's pattern requirement.")

Plaintiffs argue, however, that the *Morgan* factors only apply in analyzing closed-ended continuity. (Pl. Resp., at 9) (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771 (7th

Cir. 1994) (applying *Morgan* factors in closed-ended analysis, but not in open-ended analysis).)

Plaintiffs concede that they have not adequately alleged a closed-ended period of racketeering activity based on the events of September 1 through 3, 2003. (Pl. Resp., at 8.) *See also H.J.*, 492 U.S. at 242 (closed-ended continuity requires proof of "a series of related predicates extending over a substantial period of time.") They insist, however, that they have alleged an open-ended period of racketeering based on the allegation that DiSantis systematically misused his authority as a police sergeant, with the full knowledge of the Town.

DiSantis argues that the *Morgan* factors apply equally to open-ended continuity, but also states that "[e]ven if this Court were to examine each of the open-ended continuity factors . . . the Montes Plaintiffs' claim fails." (Def. Reply, at 8.) The Seventh Circuit has made clear that unlike closed-ended continuity, open-ended continuity "may involve predicate acts occurring over a short period of time so long as there is a threat that the conduct will recur in the future." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1049 (7th Cir. 1998). *See Guaranty Residential Lending, Inc. v. International Mortgage Ctr., Inc.*, 305 F. Supp. 2d 846, 859 (N.D. Ill. 2004). Thus, "[o]pen-ended continuity is present when (1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting [an] ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Vicom*, 20 F.3d at 782 (quoting *H.J.*, 492 U.S. at 242-43).

Plaintiffs' allegations do not satisfy any of these requirements. There is no suggestion that DiSantis threatened to repeat his conduct against the Montes brothers, that his conduct constitutes a regular way of conducting his police business, or that DiSantis was acting as part of a long-term scheme that exists for criminal purposes. Plaintiffs do allege that the Town "was put on notice, before [Hector Montes's] arrest, that [DiSantis] regularly fills out false police reports, arrests individuals without probable cause, uses an excessive amount of force in making arrests, and uses the Town to conduct racketeering activity." (SAC ¶¶ 17, 38.) Such conclusory allegations, if proven,

16

might be relevant to the question of municipal liability for DiSantis's conduct under *Monell*, they are not sufficient, however, to allege a pattern of racketeering activity. *See, e.g., Jennings v. Emry*, 910 F.2d 1434, 1439 (7th Cir. 1990) ("[A] complaint asserting a pattern of racketeering activity must allege facts from which such a continuous and related course of conduct – one indicating the threat of continuing criminal activity – reasonably may be inferred."); *Vicom*, 20 F.3d at 783 ("A threat of continuity cannot be found from bald assertions such as '[Defendant] continues his racketeering activities.'")

Realizing that the SAC contains no allegations of continuity, Plaintiffs seek leave to amend the SAC a third time to allege that they have a good-faith belief that DiSantis is the target of a grand jury investigation, that Plaintiffs are witnesses and/or victims in that investigation, and that DiSantis's actions were designed to impede or obstruct the investigation. (Pl. Resp., at 11 n.4.) The court is troubled by Plaintiffs' failure to raise these allegations, none of which appears to have any support or foundation, in their initial three complaints. It appears that Plaintiffs here merely attempt to inflate the alleged misconduct of one police officer into a RICO violation. The court declines to grant Plaintiffs leave to amend as a matter of course. The Montes brothers' RICO claim is dismissed.

## C. Malicious Prosecution

DiSantis finally argues that Hector Montes has not alleged a claim for malicious prosecution because he fails to explain who brought the criminal charges against him, and because those charges were stricken off with leave to reinstate. To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that (1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in the plaintiff's favor in a manner indicative of innocence; (3) there was no probable cause for the proceeding; (4) the defendant acted with malice; and (5) the plaintiff was injured as a result. *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662

N.E.2d 1238, 1242 (1996); *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 72, 791 N.E.2d 1206, 1219 (1st Dist. 2003).

DiSantis first argues that "Hector has not alleged that DiSantis initiated or commenced a criminal proceeding against him." (Def. Mem., at 12.) In fact, Plaintiffs allege that DiSantis "charged Hector Montes with the misdemeanor offense of possession of firearm ammunition without a FOID card, even though Plaintiff had a valid FOID card at the time of his arrest," and that DiSantis "actually caused or played a substantial role in causing to be filed criminal charges against Plaintiff Hector Montes." (SAC ¶¶ 15, 41.) This is sufficient to allege the first element of a malicious prosecution claim. *See also Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 348-49, 733 N.E.2d 835, 842 (1st Dist. 2000) (liability for malicious prosecution "extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present.")

DiSantis next claims that disposition of a case by SOL does not constitute termination in Hector's favor in a manner indicative of his innocence. DiSantis directs the court to *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 820 N.E.2d 455 (2004), in which the plaintiff was charged with three misdemeanor offenses that were SOL'd at the request of the assistant State's Attorney. The plaintiff immediately demanded a trial and, 160 days later, the speedy trial period elapsed without any further action. *Id.* at 97-98, 820 N.E.2d at 458. The plaintiff filed suit against the City for malicious prosecution but the circuit court dismissed the case as untimely, and the Illinois Appellate Court affirmed. *Id.* at 98, 820 N.E.2d at 458. The Illinois Supreme Court reversed the decision on appeal, finding that the plaintiff's malicious prosecution claim accrued at the expiration of the statutory speedy trial period, and not when the charges were SOL'd. *Id.* at 102, 104, 820 N.E.2d at 460, 461. The court explained:

> Because an SOL order does not finally dispose of criminal proceedings, the circuit court's order of August 25, 2000, striking the criminal charges against Ferguson with leave to reinstate did not result in a termination, favorable or otherwise, of the

18

criminal case against him. The criminal charges remained pending. It necessarily follows that Ferguson's malicious prosecution claim had yet to accrue.

*Id.* at 100-01, 820 N.E.2d at 459-60. In reaching this conclusion, however, the court expressly noted that "[n]o one disputes that the circuit court's decision to SOL the charges against Ferguson represented a favorable outcome for him." *Id.* at 102, 820 N.E.2d at 460.

DiSantis also cites to *Adenekan v. Chicago Police Officers*, No. 96 C 2743, 1996 WL 734705 (N.D. Ill. Dec. 19, 1996), a case involving a plaintiff who was charged with battery, resisting arrest, aggravated assault, running a red light, and failing to produce a driver's license in connection with a traffic stop. *Id.* at *1. The charges were stricken off with leave to reinstate and the plaintiff made a demand for a trial. Several months later, before the speedy trial period had lapsed, the plaintiff sued the police officers who arrested him, charging them with malicious prosecution, among other claims. The officers moved to dismiss the claim, arguing that the criminal proceedings were not terminated in the plaintiff's favor or in a manner indicative of his innocence. *Id.* at *2.

The court agreed, finding that "an SOL is not a legal termination in favor of the accused for purposes of a malicious prosecution claim." *Id.* at *3 (citing *Khan v. American Airlines*, 266 Ill. App. 3d 726, 732, 639 N.E.2d 210, 214 (1st Dist. 1994)) ("[T]he striking of a case from a criminal docket on motion of the State with leave to reinstate is not a legal termination in favor of the defendant.") Absent some indication that the plaintiff had obtained a final determination by bringing a motion for discharge on speedy trial grounds, or by expiration of the applicable statute of limitations, the plaintiff's case was still pending and he had no viable malicious prosecution claim. *Id.* at *4. *See also Woodard v. Eubanks*, 94 F. Supp. 2d 940, 942 (N.D. Ill. 2000) (citing *Adenekan* for the proposition that "Illinois law clearly establishes that disposition by SOL will not support a malicious prosecution claim.")

*Adenekan* is distinguishable on its face because the plaintiff in that case filed his malicious prosecution suit before the speedy trial period had expired. As a result, the charges could still be

reinstated and the SOL did not yet terminate the proceedings. In this case, conversely, the speedy trial period expired on March 16, 2004, long before Hector asserted a malicious prosecution claim against DiSantis on November 24, 2004. Moreover, Illinois courts have since rejected the rationale of cases such as *Khan*, upon which *Adenekan* relied, and now require courts "to look to the circumstances and nature of the prior disposition to determine whether it was a 'favorable termination' of the proceedings." *Velez v. Avis Rent A Car System, Inc.*, 308 Ill. App. 3d 923, 928, 721 N.E.2d 652, 656 (1st Dist. 1999) (quoting *Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill. 2d 267, 276, 685 N.E.2d 1347, 1350 (1997)). Thus, "terminations which do not rise to the level of adjudications on the merits may [nonetheless] satisfy the favorable termination requirement." *Id.* at 926 (citing *Cult Awareness Network*, 177 Ill. 2d at 276, 685 N.E.2d at 1353. Examples include "[a]n involuntary dismissal resulting from plaintiff's failure to comply with discovery," and a "legal disposition [that] gives rise to an inference of lack of probable cause." *Id.* at 927, 721 N.E.2d at 655 (citing *Cult Awareness Network*, 177 Ill. 2d at 277-78, 685 N.E.2d at 1353). In addition, "[a]n SOL, under certain circumstances, also may indicate a defendant's innocence sufficient to support a malicious prosecution claim." *Woods v. Clay*, No. 01 C 6618, 2005 WL 43239, at *14 (N.D. Ill. Jan. 10, 2005) (citing *Cult Awareness Network*, 177 Ill. 2d at 277, 685 N.E.2d at 1353). *See also Allen v. Smith*, No. 99 C 3521, 1999 WL 1144944, at *1 (N.D. Ill. Oct. 6, 1999) ("[I]t is plaintiff's burden to present evidence that the SOL was entered for reasons consistent with her innocence.")

In *Velez*, the plaintiff's criminal damage to property charge was SOL'd on two occasions before the statute of limitations and the speedy trial period expired. *Id.* at 924, 721 N.E.2d at 653. The plaintiff filed a malicious prosecution suit and the circuit court denied the defendant's motion to dismiss. The Illinois Appellate Court affirmed, noting first that "whether or not the requirement [of a favorable determination] is met is to be determined not by the *form* or *title* given to the disposition of the prior proceeding, but by the *circumstances* under which that disposition is

20

obtained." *Id.* at 927, 721 N.E.2d at 655 (emphasis in original). The court held that the defendant had abandoned its prosecution of the criminal charges against the plaintiff, and that nothing in the complaint indicated that the abandonment was

> the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial.

*Id.* at 929, 721 N.E.2d at 656 (quoting *Swick*, 169 Ill. 2d at 513, 662 N.E.2d at 1243). The fact that the defendant company twice refused to proceed to trial on the charges indicated to the court that "the disposition was premised upon a lack of probable cause and was indicative of the innocence of the plaintiff." *Id.*, 721 N.E.2d at 656-57.

In this case, Plaintiffs allege that Hector Montes was charged on September 3, 2003 with misdemeanor possession of firearm ammunition without an FOID card. The charge was SOL'd on October 6, 2003, at which time Hector demanded a trial. The speedy trial period expired on March 16, 2004, and DiSantis himself concedes that the charge "is no longer pending against [Hector Montes]." (Def. Mem., at 13; Pl. Resp., at 14.) As in *Velez*, there is nothing to indicate that the charge against Hector was abandoned due to a settlement agreement, misconduct, mercy, new criminal proceedings, or impracticability, as opposed to lack of probable cause. *Id.* at 929, 721 N.E.2d at 656. In addition, Plaintiffs expressly allege that DiSantis "did not have any legal justification to seize the Montes Plaintiffs" and that the charge was SOL'd "in a manner suggesting the innocence of Plaintiff Hector Montes." (SAC ¶¶ 13, 15.) At this stage of the proceedings, Plaintiffs have sufficiently alleged a malicious prosecution claim on behalf of Hector Montes. *Cf. Green v. Delatorre*, No. 99 C 6452, 2001 WL 630714, at *3 (N.D. Ill. May 29, 2001) (dismissing malicious prosecution claim where plaintiff did not allege that disorderly conduct charges against him were SOL'd "for reasons consistent with his innocence.")

## CONCLUSION

For the reasons stated above, DiSantis's motion to dismiss (Docket No. 26) is granted in part and denied in part. The motion is denied as to Bertucci's false arrest and detention claim and Hector Montes's malicious prosecution claim, but granted as to the Montes Plaintiffs' RICO claim.

ENTER:

Dated: May 10, 2005

REBECCA R. PALLMEYER
United States District Judge